Good morning, may it please the Court. My name is Betsy Stevens, representing the appellant Ms. Rosemary Costa. And as you just mentioned, this is a social security disability case. And the biggest issue here is that at step four of the sequential analysis, the ALJ found that Ms. Costa could return to her past relevant work, and the ALJ found that her past relevant work was as a retail salesperson and as a garment sorter. And the problem with this is that Ms. Costa never worked only as a garment sorter or only as a retail salesperson. It's our contention that her actual job, and she worked at both the Salvation Army and the Humane Society thrift stores, and her job at both of those places was more consistent with the job of laborer. And this is what the vocational expert at the hearing testified to, and the ALJ also acknowledged this. Didn't the vocational expert say that in the national economy, the jobs she was doing were more akin to retail clerk and sorter than to laborer? She did say that, but the problem is that this is we're dealing with step four, and step four is all about past work. So when we asked you to address the Carmichael case, and that case and I think some other cases from this circuit essentially say at step four there's two questions. What was her past relevant work, and can she perform that work in the national economy? It's not necessarily, we don't necessarily focus on everything she did, but rather what the nature of her work was. So tell me where the ALJ went wrong in determining the nature of her work. Okay. Well, the nature of her work is that part of her job was a retail salesperson, and part of her job was sorting garments, but she also received donations such as furniture and large boxes of items, and she was moving those things around that were up to 100 pounds. Can we tell how much of her job the latter part was from the record? I'm sorry, Your Honor. I'm not really sure about the percentages. I don't know that she ever. I understood she said something like she spent a third to two-thirds of her time doing the labor-intensive parts of her job. Is that consistent with your question on the record? Yes, Your Honor. Does it make a difference which of the two it is? Well, the main thing that we need to be concerned with is identifying her past job correctly and making sure that it includes the whole job, you know, all of the things that she did. So if, even if ---- She spent 5 percent of her time in the labor-intensive chores, but the national economy retail people with the 95 percent description didn't do those things, would the ALJ be correct? No, Your Honor, because if she moved these things around, then that was part of her overall job. But don't our cases say exactly the contrary, that we don't ---- we don't focus ---- we focus ---- we can focus on what the job is in the national economy? I understand your argument that her job was mostly labor. That one I understand. But if it was only a small amount of labor, your position is that the Step 4 analysis is still on that tiny bit? Well, it's our position that you're really ---- once you get to Step 5 is when you're more concerned with the national economy, because that's about other work that she could possibly perform. And Step 4 is about what her past job actually was. But doesn't the reg on Step 4 say that the ALJ should determine whether she can either do what she was doing before or that job in the national economy, one of the two? It does say that, Your Honor. But our contention is that her actual job, both as she performed it and in the national economy, is most properly identified as laborer, which is a medium job. Okay. And that's why I was asking, where in the record can I get support for your position? I believe it's page 90, 96 of the transcript. It's the vocational expert's testimony from the second administrative hearing. And ---- Is there any place where your client testified to that effect? She spoke about it at the first administrative hearing, which I believe is near page 66 of the transcript. And she also completed an updated work history report. And that's at ---- I believe it's page 259 of the transcript. And it describes what she did at each of her past jobs. Do any of those help me, assuming that it makes a difference, do any of those help me in determining how much of her past job those were as opposed to whether or not she did something at her past job? The part of her testimony at the first administrative hearing, I believe it's page 60, in the 66-ish of the transcript, is where she mostly talks about the amount of time she spent doing each task at the thrift store. Okay. And it's our contention that once the job is properly identified as laborer at step 4, then her past job was a medium-level job. And the ALJ found that Ms. Costa can only perform light work. So she's unable to do the job of laborer anymore. So at step 4, once we get past step 4, then based on the medical vocational rules, the grids, based on Ms. Costa's age, her education, her work experience, even if she's limited, even if she's able to perform light work, she's still disabled as of age 55, based on the grids. And if you also find that some of the other evidence was not properly credited, such as the claimant's testimony and the lay witness testimony and the opinion of Ms. Costa's doctor, who is Dr. Carroll, those pieces of evidence establish that Ms. Costa is actually limited to less than sedentary work. So that would mean if you credit that evidence, then she would be disabled as of her alleged onset date, which is in December 2004, because she was over age 50 at that point in time. Was there some evidence in this case that past that date, the alleged onset date, Ms. Costa said to people, I'd like to work more, you've restricted me to 15 hours a week or some number like that, and I'd really like a full load? I believe she spoke to her doctor, and she said something along the lines of that she was trying to find a job, but no one would hire her with the limitations that she had, and that those jobs wouldn't accommodate her inability to work. So I think she said that to stand or sit or lift. Well, but didn't she also at that time have a part-time job and complained that they wouldn't give her more hours on the part-time job? I think she said, well, she was at, I believe she was at Fred Meyer at that point, and she was working, she had been working in the daycare, the little playroom with the children, but once she got injured, they shifted her to Greeter, I believe it was, at the door. And she said that after a while they ran an out-of-light-duty task for her to perform, and they said that they couldn't give her any more hours at that light level of work. And so she had to quit because there was no more work for her to do. Thank you, counsel. Thank you. Good morning. May it please the Court. Nicole Trevely for the Commissioner. The ALJ's decision is supported by substantial evidence and should be affirmed. Well, let me ask you to go back to what Mr. Sherwitz was asking about. He said that there was testimony she did a third, two-thirds of the heavier work, and asked what about 5 percent. But the facts in this case are that the V.E. said, rotational expert said, she did a lot of what the DOT would consider store labor, actually receiving and moving donations. So we're not dealing with a minimal amount. We're dealing with a lot of work in her job that would be classified as a store labor. Isn't that correct? Well, first, Your Honor, the one-third to two-thirds that Judge Herwitz mentioned, that's from an improperly and incompletely filled-out disability form. In that form we have the V.E.'s testimony. Yes, Your Honor. She did a lot of that work. The primary classification, though, was the sorter and the retail sales. There was a clarification that parts of the job also involved this sorter position. A lot of what she did would be considered sorter or, sorry, excuse me, laborer. However, as a whole, and taking the record as a whole, it's clear that Ms. Costa was much more akin to the retail sales and the sorter position.  I'm going to ask you a question about the sorter. Tell me why. Tell me where in the record I can find that. Sure. Regarding the sorter job and the thrift store duties, page 83 of the E.R., she was asked what she did. And she said the donations, going through them, putting them in the right boxes to take them out to wherever section they go, hanging them, and then she gets to moving mattresses, appliances, couches, whatever comes in. What about the retail? Did you do that as well? Yes, I did. Well, and I've read that part of the record. I don't have any doubt that she did retail clerk and sorter tasks during her job. The question is, and this is why I think it's why we asked you to address the Carmichael cases, is at some point when a large proportion of the job is also laborer, we have a misclassification. Right. My question is, on this record, can we tell why the – how can we conclude that the ALJ appropriately classified this as sedentary work as opposed to the other part of the record? Sure. And the ALJ categorizes it as light work. And it's hard to say how much of the time she was moving mattresses and moving couches. That one-third to two-third is not – does not necessarily relate to this. And as a whole, the ALJ tasks the vocational expert in classifying and properly classifying the job. But when the vocational expert says, as Judge Reinhart just read from her testimony, a lot of what she did was labor-intensive, don't we have an insufficient record from which to conclude that her job should have been classified as light? No, I don't believe we do, especially given Ms. Costa's credibility and her record of some exaggeration in the context of disability applications. So the V.E. Well, I'm not suggesting the V.E. couldn't have disbelieved her. But he doesn't suggest that he's – the ALJ, I'm sorry, or the V.E. don't suggest that they disbelieve that description. They disbelieve a lot of her symptoms. But is there any non-credibility finding as to how much time she spent laboring? There's no precise estimate. And so unlike Carmichael, where you have that 20 percent supervisory and 80 percent laborer, and there the – there was a clear mischaracterization because 80 percent of that job was wrong, and that reading the Dictionary of Occupational Titles description of that superintendent position, it became – it's clear that that was a mischaracterization. Here it's not a mischaracterization. Going through the record and going through the testimony that Ms. Costa herself provided, in addition to the vocational expert testimony. Well, if she – but if she spent two-thirds of her time, as she claimed, maybe with no credibility, but we don't have a finding, if she spent two-thirds of her time laboring, if you will, heavy labor, wouldn't that – wouldn't this be a Carmichael mischaracterization? I would say that would be two-thirds of the time sorting, going through the donations, sorting them, putting them into boxes, which fits in with the garment-sorter position. And so you think the one-third, two-thirds is the sorting, not the heavy lifting part? It's hard to tell, especially given how incomplete that particular form is. If you look through that form, you'll notice that she was asked to provide descriptions of the work she did, and she just didn't. And so in Carmichael, the plaintiff – or Mr. Carmichael actually described the job that he performed and went through it. And here she just left those forms more or less blank. Additionally, and I just want to note it for the record and to flesh out the sales clerk position, in 1994 and before the period that the ALJ could truly determine or count as substantial gainful activity, Ms. Costa did work in a retail sales establishment. Her attorney admitted to that. Now, that is only – that's offered to rebut Ms. Costa's statement at the beginning of her testimony. She said that she never worked as a clerk. And that's not the case here. That's really not the issue. The issue is what was the last job that she was doing? How should it be classified? And the ALJ said – oh, is it not? The VE said she did a lot of what the DOT would consider store labor, actually receiving and moving donations. Now, somebody does a lot of work that requires more skills or more ability. And in order to do the job, you need both the ability to lift, weigh, all of that. How could it be possible at Stage 4 to say she can go back to doing that job if a job requires functions that she can no longer perform? Sure. And I have two answers to that. First, we tasked the VE with translating all of this information into realistic job market probabilities. And what the VE first testified to was that it was the sort of position, and then went on to say that there was a lot of this other element. And then, second, according to SSR 8261, the former job may have had demands and job duties significantly in excess of those generally required. So here we really get into that actual versus general territory. And we don't dispute that as actually performed, Ms. Costa lifted significantly more. However, given the position, given the position as generally performed, as testified primarily by the VE, the – she can perform that position as it exists in the general economy. Well, and I don't – I don't doubt that that part of the VE's finding is supported, that most retail sorters and clerks don't have to do heavy lifting. My question is, since we have to focus on her last relevant employment, why was it properly classified as retail clerk? Why wasn't it properly classified as laborer, given – or why shouldn't we ask the ALJ to make more specific findings? And this, I suppose, is my real question.  And again, I go back to Ms. Costa's testimony. I go back to her testimony in the initial work report where she said she worked as a retail clerk off and on from 1994 to 2004. And then go to the VE's job and the ALJ's job to look at the record as a whole and to get as close as you can. The Dictionary of Occupational Titles doesn't have thrift store worker as a category. It has train salesperson. It has men's clothing salesperson. It has shoe sales. But the vocational expert did the best that she could to classify that job based on the testimony given by Ms. Costa and her understanding of the work existing in the economy. And that decision under Bayless is expertise that the vocational expert can provide. As I have a bit more time, I'd like to turn to the issues of credibility and also Dr. Carroll's testimony. As I mentioned earlier, Ms. Costa was less than credible. There is evidence of exaggeration in the context of seeking disability benefits. For example, on May 1, 2009, she aberrantly reported. There was no credibility finding in this case? There was a substantial credibility finding. And the credibility finding found that Ms. Costa was less than credible. And my question was, did the ALJ, and again, I'm relying on my recollection of a rather long record. I thought the ALJ said, I find her less than credible in reporting her symptoms. Correct? Yes. Did he also find her less than credible in any other respect? That's the permissible inference that we asked this Court to make. So while there was no specific finding. Why isn't it a permissible inference to go the other way, that if they found with regard to one aspect that she was less than credible, why isn't the permissible inference that they did not find her less than credible with regard to the other aspects? Because given the language used by the ALJ in the decision, finding her a less than reliable historian, finding the exaggeration in the context of disability, I believe that is an important backdrop and an important, an important factor in this case, is that her, she, on the day that she asked her doctor, Dr. Carroll, to fill out disability forms, that's the day that she aburrently reported that her symptom was 10 out of, her symptoms were 10 out of 10 on a good day, 15 out of 10 on a bad day. That's a blip. And it is important to realize that that is while she handed Dr. Carroll forms to fill out regarding her disability. So it really shows the plaintiff's motivation, or Ms. Kosta's motivation here and her, how she is going about approaching her application for disability. Roberts. I know you don't want this result, but let me ask you a hypothetical question. You may well be right about all these things, but if the ALJ didn't say them, shouldn't we ask him to? Rather than infer them from the record. Sure. It goes to the dewey, to the develop issue. The ALJ did what he could to create as complete a record as possible. An example from the record is when he tried to pin down Ms. Kosta about her release from light work and when she became unable to even do light work. And it took four pages, 10 repetitions to get Ms. Kosta to state when she was unable to do light work. And so while what the ALJ's duty to do is to create a basis for making his decision, and that's what he did, and moreover, here we should defer to the administrative law judge. The – essentially, this is substantial evidence should support his decision, but the administrative law judge is entitled to deference. And under the Molina decision, even when an agency explains its decision with less than ideal clarity, a reviewing court must uphold it if the agency's path may be reasonably discerned, and that's what we contend has here. It might also think about the individuals in these cases who are generally not as bright as even the ALJs, and they generally have all kinds of problems. I mean, you can't imagine how anybody lives with all those diseases you see in those cases. They have eight kinds of ailments. You're surprised they're still alive. And when they testify, they're not the most sophisticated people, and they don't give the kind of clear evidence that you might like before they get these wonderful benefits. And even the doctors aren't such great geniuses. If you read the doctor's report on the – all of her conditions, the back, which was the main reason, and the thumb, which was incidental at that point, and then he signs a report that says, well, she's had these conditions since whatever, 2003, when she didn't have the thumb condition until 2008 or so. And then you say, well, look, the doctor said she had it since 2003. Well, these are not the most – the clearest reports by anybody, the VE, the ALJ, the individual seeking benefits who's otherwise going to be just a burden on society. And then we keep sending these cases back, and sometimes it takes 20 years until you get the answer, while they should have had benefits for at least 10 of them. Maybe we shouldn't have such a perfectionist view and realize that these benefits are really to help people who need them and may not be able to go through one of these hearings and answer questions. So that's my speech. And I'm neutral. Your point is well taken, Your Honor. There is a system. There are regulations that dictate how disability benefits are given. There are humans behind all of the curtains. You know, a human is the ALJ. A human is a vocational expert. A human is obviously a plaintiff seeking benefits. The ALJ – You probably find all of them not credible, if you really try. I believe – Even the lawyers. And that's the point I wanted to make, is that Ms. Costa was represented by a lawyer at the second hearing. And the vocational expert and the ALJ looked at the record as a whole, did what they could, and their decision is supported by substantial evidence. And the Commissioner asks that the position be affirmed. Thank you. Thank you. I'd just like to mention that this case does not really turn on Ms. Costa's credibility or lack thereof. It's our contention that the record does not show she exaggerated and that the ALJ improperly rejected the doctor's testimony and Ms. Costa's testimony and the testimony of the lay witness. But – What do you want us to do? Well, even if you decide that the ALJ was right about all the other parts of this case, the main issue is that at Step 4, her past job was not properly classified. Tell me what you want us to do. What relief do you seek? Well, we would like for you to remand the case for payment of benefits, because if at Step 4 she cannot perform her past relevant work, then once we get to Step 5, because she's over age 50, she's disabled under the medical vocational rules. So your position is that the ALJ never gets to Step 5? Yes, Your Honor. And your position is we can hold as a matter of law that the ALJ misclassified her job? Yes, Your Honor. Because the ALJ found that she was able to return to only the least demanding aspects. Well, but that's my question here. Shouldn't – it seems to me that there's at least some – the record's at least a little bit ambiguous on this. Shouldn't we ask the ALJ to be more specific about why he concluded that the relevant job was retail salesperson? Well, the ALJ already had an opportunity to question the V.E. and the – I mean, the vocational expert. And the vocational expert said that she did lots of moving things around and that the job was more properly classified as labor. Well, no, she didn't say it was more properly. She said she would classify it as a retail clerk or a sorter. That was her classification, wasn't it? Well, she said that it could be retail clerk or sorter, but she also did all these other things, and that would be classified as laborer the way that she performed it. And this case has already been remanded once by the Appeals Council, and it's been pending for about at least 10 years. And if this Court finds that she can't perform her past relevant work, then she's disabled under the grids. Thank you, counsel. Thank you.
judges: Goodwin, Reinhardt, Hurwitz